**UNITED STATES of America,
Plaintiff,**

v.

**Claude F. MORGAN, Defendant.
Civ. A. No. 13790.**

United States District Court
S. D. Texas,
Houston Division.
Oct. 24, 1962.

John H. Baumgarten, Asst. U. S. Atty., for plaintiff.

William J. Knight, Houston, Tex., for defendant.

CONNALLY, Chief Judge.

This is an action by the Government seeking to reduce to judgment assessed tax claims against the Defendant. All of the facts are the subject of a stipulation. The only question is one of law, i. e., whether the action was timely filed. This in turn depends upon the construction to be given to certain waivers of the statute of limitations, all embodied in a series of offers in compromise made by the Defendant as hereinafter set out.

The assessments were made for the calendar years and in the amounts as follows:

| Item | Calendar Year | Assessment Date | Outstanding Balance |
|------|---------------|-----------------|---------------------|
| 1 | 1947 | 6/16/48 | $ 232.39 |
| 2 | 1947 | 5/23/50 | 250.63 |
| 3 | 1948 | 5/11/49 | 1,816.18 |
| 4 | 1948 | 5/23/50 | 1,645.38 |

The pertinent limitation statute is Section 6502 of the Internal Revenue Code of 1954 [1] providing for a limitation period of six years following the date of assessment.

Considering item 1, assessed June 16, 1948, the action to recover normally would have been barred June 16, 1954. On May 11, 1954, the taxpayer filed "Tax Collection Waiver" with the Director of Internal Revenue, providing in pertinent part that item 1 "may be collected (together with such interest, penalties or other additions as are provided for by law which have accrued and which may accrue on the assessment) from said party of the first part (the Defendant here) by distraint or by a proceeding in Court begun on or before December 31, 1960."

The effect of this instrument was to extend the period of limitations as to item 1 until the date stated. As the present action was not filed until after December 31, 1960, I consider this instrument to be of no consequence in determination of the controlling issue.

Each of the offers in compromise hereafter mentioned contemplated a settlement involving all of the items in controversy. The chronology of events follows.

On April 9, 1954, the Defendant filed with the District Director his first offer in compromise. On Treasury Form 656, it contained a provision suspending the running of the statute of limitations for the period during which the offer was pending and for one year thereafter.[2]

On June 22, 1955, before the Government had acted on the original offer, an

---

1. See also Section 276 of the Internal Revenue Code of 1939; in all respects material to this case, the two statutes are the same.

2. "In making this offer, and as a part consideration thereof, * * * the proponent hereby expressly waives:
    2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending and for one year thereafter."

amended offer in compromise was filed with the District Director. On Treasury Form 656-C this instrument suspended the running of the statute of limitations for the period during which the offer was pending, or during which any installment remained unpaid, and for one year thereafter.[3]

On August 17, 1955, the foregoing offers were rejected by the Government and the Defendant was so notified. Giving effect to the waiver provisions, this would have suspended the running of the statute until August 17, 1956.

On January 23, 1956, (and thus within the period of suspension) the Defendant made a second offer, upon Treasury Form 656-C.[4]

On May 10, 1956, the Defendant amended the offer of January 23, 1956, again on Treasury Form 656-C.[5]

On September 26, 1956, the Government advised the Defendant of the acceptance of the offer mentioned in the preceding paragraph. This offer contained an agreement by the Defendant to sell his home, and, within six months of the date of acceptance, to pay $4,000.00 in compromise. However, no such payment was ever made by the Defendant.

On December 17, 1958, the Government, having failed to receive payment as noted above, terminated all settlement negotiations and so advised the Defendant.

This action was filed August 3, 1961.

█ I would construe the $4,000.00 which the Defendant promised to pay as an "installment" which "remains unpaid" as those terms are used in Treasury Form 656-C. This condition continued until the Government's termination notice of December 17, 1958. Thus the running of the Statute was suspended until one year thereafter, namely December 17, 1959.

The application of simple arithmetic to the foregoing indicates that this action is timely as to items 2 and 4, and is barred as to items 1 and 3.

As to each of the items in controversy, the period during which the operation of the statute was suspended began April 9, 1954, and continued until December 17, 1959.

As to item 1, limitation began to run June 16, 1948, and continued until April 9, 1954, a period of five years, nine months and twenty-four days. Thus there remained a period of only two months and six days of the statutory period after limitation again began to run. Hence as to item 1, the action was barred February 23, 1960, (being two months and six days following December 17, 1959).

As to item 3, limitation began May 11, 1949, and continued until April 9, 1954, a period of four years, nine months and twenty-eight days; thus leaving a period of one year, two months and two days remaining after the running of the statute was resumed. Hence the action became barred as to item 3 February 19, 1961.

Similar calculations will show that items 2 and 4, assessed May 23, 1950, are not barred.

█ In attempting to show that the largest item mentioned above (item 3, assessed May 11, 1949) is not barred, the Government would calculate the period during which the statute is inoperative in a different manner. The Government would read the waiver provision in each offer in compromise not as a *suspension* of the operation of the statute during the interval provided, but rather as though it read that the taxpayer agreed

---

3. "In making this offer, and as a part consideration thereof, * * * the proponent hereby expressly waives:
    2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for one year thereafter."

4. Ibid.

5. Ibid.

to *extend* the period of limitation *for the number of days during which the Government held such offer under consideration, to which in each instance should be added three hundred and sixty five days.* Where, as here, more than a single offer has been made, the net effect of the Government's contention is to calculate separately each period of the statute's interruption; and to tack one to the other, thus treating them as though they were consecutive. Hence in the instant case, the Government points out that the first offer was under consideration from April 9, 1954, until August 17, 1955, a period of one year, four months and eight days. The Government would thus give effect to this action as extending the limitation period by two years, four months and eight days. The second offer was under consideration a period of two years, ten months and twenty-four days (including the period until termination for failure to pay). Thus this offer and its rejection would extend the limitation period by three years, ten months and twenty-four days. Adding the two extensions together as though they were consecutive (which in fact they were not) the Government argues that the total extension resulting from the two offers was six years, three months and two days, making a total limitation period of twelve years, three months and two days. Under this theory, item 3 would not have been barred until August 13, 1961, and the action would have been timely by a matter of ten days.

It seems sufficient answer to this argument to point out that this is not the way the waiver reads; and that it fails to distinguish between an agreement to *extend* the statutory period for a given number of days, on the one hand, and an agreement that the operation of the statute may be *suspended* or interrupted during an uncertain interval, on the other.

██ The purpose of such provision for suspension of the statutory time is to permit the Government to have ample opportunity to consider the offer in compromise, without concern over the delay. United States v. Havner, 8th Cir., 101 F.2d 161; Shambaugh v. Scofield, 5th Cir., 132 F.2d 345. The provision—no doubt prepared by the Internal Revenue Service for its own benefit—is indeed a generous one. There is much reason for a suspension of the statute while an offer is being considered, and for perhaps one year thereafter; but when that offer has been finally rejected, there seems little reason to say that if a second offer is made, the Government may have the benefit of a longer suspension period than is provided for in such second offer.

██ If the interpretation of this provision be uncertain or its language ambiguous, it is to be construed in a manner most favorable to the taxpayer. United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Bowers v. N. Y. & Albany Lighterage Co., 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484.

This holding receives some support from United States v. Havner, 8th Cir., 101 F.2d 161, though is contrary to United States v. Bosk, D.C., 180 F.Supp. 869 and United States v. Wilson, D.C., 182 F.Supp. 567.

Judgment will go for the United States for the amounts due under items 2 and 4. Counsel will present decree.

The foregoing is adopted as findings of fact and conclusions of law.