**UNITED STATES of America,
Appellant,**

v.

**Joel NEWMAN, Appellee.**

**No. 25072.**

United States Court of Appeals
Fifth Circuit.

Dec. 12, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Marselli, J. D. Garrett Crombie, Willy Nordwind, Jr., Attys., Dept. of Justice, Washington, D. C., William A. Meadows, Jr., U. S. Atty., Lavinia L. Redd, Asst. U. S. Atty., Miami, Fla., for appellant.

Sidney Poller, Boca Raton, Fla., Milton E. Grusmark, Miami Beach, Fla., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

GOLDBERG, Circuit Judge:

This tax appeal presents solely a question of limitations. The government through homogenization of the statute of limitations, waivers, and offers in compromise would give itself twenty-one years to file this suit to collect these taxes. In so doing, the government has given itself a limitations period of truly Rip Van Winkle proportions. The taxpayer in the court below successfully asserted that the government's cause of action was barred by the limitations provisions of the Internal Revenue Code.[1]

In determining whether the government's action was barred by limitations, we must decide whether certain assessments beginning on November 21, 1945, were kept viable by various waivers[2] and offers in compromise.[3] The tax-

---

1. Int.Rev.Code of 1939, § 276(c):
Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

2. Each offer of compromise was executed on an IRS form and contained a material-

ly uniform waiver of the statute of limitations:

"6. The undersigned proponent waives the benefit of any statute of limitations, applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for 1 year thereafter.

3. The waivers of collection were also executed on IRS forms and provided that the specified assessment "may be collected (together with such interest, penalties, or other additions as are provided for by

payer, quite predictably, argues that the district court properly held that the government waited too long to bring this suit.

The facts are not disputed and are detailed in the opinion of the district court which granted the taxpayer's motion for summary judgment. United States v. Newman, S.D.Fla.1967, 265 F.Supp. 540. We adopt the district court's statement of facts and affirm its judgment.

The four separate assessments involved in this appeal have different assessment and limitation dates, but the computational and limitations problem to be solved for one of the assessments is typical of all the others, and the solution as to that assessment will govern all the others. Therefore, we will excerpt and summarize only one of the assessments in question.[4]

The assessment for item 1, which is the assessment we have singled out for analysis, was made on November 21, 1945, and the statutory period of limitations began to run on that date. On November 12, 1946, the taxpayer made an *offer in compromise* which on its face suspended the running of the limitations statute for the period during which the offer was being considered by the Internal Revenue Service and for one year thereafter. This *offer in compromise* was rejected on September 17, 1947. On May 2, 1951, the taxpayer signed a *waiver agreement* extending the collection period through December 31, 1955. On June 23, 1953, the taxpayer made another *offer in compromise* which was rejected on June 9, 1954. (Note that the suspension period of this offer, from June 23, 1953, to June 9, 1955 falls entirely within the period already covered by the *waiver agreement*.) On July 23, 1954, the taxpayer made a third *offer in compromise* which was rejected on June 6, 1960. The taxpayer made two more *offers in compromise* after the termina-

law which have accrued and which may accrue on the assessment) from said party of the first part [Newman] by distraint or by a proceeding in court begun on or before December 31, 19——." The waivers of May 2, 1951 specified the year as 1955; that of Nov. 14, 1952 specified 1956.

4. For the sake of completeness, however, we list below a chart showing the series of assessments and another chart showing the various offers in compromise and the waiver agreements.

| Item | Calendar Year | Assessment Date | Outstanding Balance |
|------|---------------|-----------------|---------------------|
| 1 | 1943 (amended return) | 11–21–45 | –0–* |
| 2 | 1944 (amended return) | 11–21–45 | $ 60,539.89 |
| 3 | 1944 (audit) | 9–12–47 | 41,158.05 |
| 4 | 1945 (return) | 5–22–46 | 48,576.39 |
| | | TOTAL | $150,274.33 |

* Assessed liability paid in full, but accrued interest from date of assessment to date of payment still due.

11–12–46 Offer in compromise, which was rejected on 9–17–47 (Items 1–4)
5–2–51 Waiver agreement, extending collection period through 12–31–55 (Items 1, 2 and 4)
11–14–52 Waiver agreement, extending collection period through 12–31–56 (Item 3 only)
6–23–53 Offer in compromise, which was rejected on 6–9–54 (Items 1–4)
7–23–54 Offer in compromise, which was rejected on 6–6–60 (Items 1–4)
6–6–61 Offer in compromise, which was rejected on 7–14–61 (Items 1 and 2 only)
6–7–62 Offer in compromise, which was rejected on 4–14–64 (Items 1–4)

tion date of the *waiver agreement:* one on June 6, 1961, which was rejected on July 14, 1961, and one on June 7, 1962, which was rejected on April 14, 1964.

The assessment, waiver, and offers in compromise relevant to item 1 are illustrated by the following chronology:

| | |
|---|---|
| November 21, 1945 | Assessment made and statute of limitations begins to run. |
| November 12, 1946 | Taxpayer makes his first offer in compromise; statute of limitations "suspended" until offer rejected and for one year thereafter. |
| September 17, 1947 | IRS rejects taxpayer's first offer in compromise. |
| September 17, 1948 | Statute of limitations begins to run as one year has passed since the IRS rejection of taxpayer's offer in compromise. |
| May 2, 1951 | Taxpayer signs waiver agreement extending collection period through December 31, 1955. |
| June 23, 1953 | Second offer in compromise made; statute of limitations suspended. |
| June 9, 1954 | Second offer in compromise rejected. |
| July 23, 1954 | Third offer in compromise made. |
| December 31, 1955 | Limitation period created by waiver agreement expires, but IRS cause of action kept viable by taxpayer's third offer in compromise. |
| June 6, 1960 | Third offer in compromise rejected. |
| June 6, 1961 | Fourth offer in compromise made. |
| July 14, 1961 | Fourth offer in compromise rejected. |
| June 7, 1962 | Fifth offer in compromise made. |
| April 14, 1964 | Fifth offer in compromise rejected. |
| April 14, 1965 | Limitations again begins to run as one year has passed since the rejection of taxpayer's fifth offer in compromise. |
| January 20, 1966 | This suit filed. |

———◆———

The district court used the following language in holding that the statute of limitations barred the government's claim:

"By virtue of each of the waiver agreements described above, the taxpayer waived the benefit of the statute of limitations until a date certain, thus extending the limitations period until that date. Since the running of the statute of limitations was *suspended*[5] by the offers in compromise until after each extension date specified by the taxpayer in his waiver agreements, these waiver agreements

5. For a discussion of the distinction between *suspension* and *extension* of limitations, see footnote 6.

are of no consequence in the computation of the limitations period.

"Thus as to Items 1 and 2, the period began to run on November 21, 1945 and continued to run until November 12, 1946, a period of 356 days. There then remained a period of five years and nine days when the period again began to run on September 17, 1948. Limitations ran from September 17, 1948 until June 23, 1953, leaving 95 days remaining. From June 23, 1953 until June 14, 1965 there were a series of offers in compromise which suspended the operation of the statute during that period. One year from the rejection of the last offer, limitations again began to run, and the statutory period expired 95 days thereafter, on July 18, 1965. Hence as to Items 1 and 2, this action is time-barred." 265 F.Supp. at 541–542.

The district court's holding is founded upon its determination that the date certain created by the waiver agreement became functus officio when that date was reached during the time the limitations statute was suspended by the taxpayer's second offer in compromise. Thus the district court reasoned that when the period of suspension created by the offers in compromise ended, the determination of whether the government's claim was barred should be made by reference to the time remaining of the statutory six-year period. Since there remained only ninety-five unused days of that period, the district court concluded that the government had ninety-five days after the end of the limitations suspension to bring this suit; and that since the government had not brought suit within that time, the government's claim was barred by limitations.

The diagram which follows illustrates the computations of the district court:

———————————————————Nov. 21, 1945: Six-year statute of limitations starts to run.

Statute runs for 356 days, leaving 5 years and 9 days of the 6 year limitation period.

———————————————————Nov. 12, 1946: Taxpayer makes first offer in compromise.

Statute of limitations suspended during this period (time offer being considered by government and one year thereafter).

———————————————————Sept. 17, 1948: 6 year statute again begins to run.

· · · · · · · · · · · · · · · · · · · · · May 2, 1951: Waiver agreement signed which extends limitations bar to a date certain, Dec. 31, 1955.

Six year statute runs for 4 years and 279 days, leaving 95 days yet to run.

———————————————————June 23, 1953: 6 year statute suspended by taxpayer offers in compromise two through five.

Statute of limitations suspended during this period.

· · · · · · · · · · · · · · · · · · · · · · Dec. 31, 1955: Date certain created by waiver agreement is passed. At this point district court regards waiver agreement and date certain as functus officio.

——————————————————April 14, 1965: Six year limitation statute again begins to run as one year has passed since the government's rejection of the taxpayer's last offer in compromise.

The 95 unused days of the 6-year statute of limitations are running.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*July 18, 1965: Six year statute of limitations has run and government's claim is barred.

——————————————Jan. 20, 1966: This suit filed.

On appeal the government does not contest the district court's mathematical computations but instead poses two mutually dependent challenges to the district court's premise regarding the waiver agreement. The government first argues that the district court erred in its determination that the waiver agreement was functus officio. Quite to the contrary, says the government, the six-year period should be considered the nullity. It is the position of the government that the waiver agreement rendered the six-year statutory period functus officio by creating a new limitations period which, without any suspensions, would expire on December 31, 1955. The second point in this argument is that the waiver agreement is construed as having created a *period of time* measured in years, months, and days rather than merely an extension of the limitations date to a *date certain* in the future. Thus the government takes the position that when the taxpayer's second offer in compromise suspended limitations, it suspended the limitations period created by the waiver agreement rather than the six-year period. Consequently, when the suspension period ended on April 14, 1965, the government had two years, six months, and eight days remaining in which to bring suit; and this suit would have been timely brought.[6]

6. We note with approval that the government has abandoned the position which it unsuccessfully argued in United States v. Morgan, S.D.Tex.1962, 213 F.Supp. 137. In *Morgan* there were a series of offers in compromise and amended offers in compromise, most of which were made while the statute of limitations was suspended by a prior offer in compromise. The government unsuccessfully argued that each offer in compromise *extended* rather than *suspended* the statute of limitations. The mathematical result of the government's extension theory was to extend the six-year statute of limitations by the time each offer in compromise was under consideration plus one year for each offer. Thus where the taxpayer made an offer in compromise and then, before the first offer was rejected by the government, made a second or amended offer in compromise, the government would tack the time each offer was under consideration plus two years (one year for each offer in compromise) to the six-year statutory period. Judge Connally, however, rejected this argument and held that the statute of limitations was *suspended* for the time the successive offers in compromise were pending plus one year after the last offer was rejected. In explanation of his holding that the government's claim was barred by limitations, Judge Connally wrote:

"In attempting to show that the largest item mentioned above (item 3, assessed May 11, 1949) is not barred, the Government would calculate the period during which the statute is inoperative in a different manner. The Government would read the waiver provision in each offer in compromise not as a *suspension* of the operation of the statute during the interval provided, but rather as though it read that the taxpayer agreed to *extend* the period of limitation *for the number*

*of days during which the Government held such offer under consideration, to which in each instance should be added three hundred and sixty five days.* Where, as here, more than a single offer has been made, the net effect of the Government's contention is to calculate separately each period of the statute's interruption; and to tack one to the other, thus treating them as though they were consecutive. Hence in the instant case, the Government points out that the first offer was under consideration from April 9, 1954, until August 17, 1955, a period of one year, four months and eight days. The Government would thus give effect to this action as extending the limitation period by two years, four months and eight days. The second offer was under consideration a period of two years, ten months and twenty-four days (including the period until termination for failure to pay). Thus this offer and its rejection would extend the limitation period by three years, ten months and twenty-four days. Adding the two extensions together as though they were consecutive (which in fact they were not) the Government argues that the total extension resulting from the two offers was six years, three months and two days, making a total limitation period of twelve years, three months and two days. Under this theory, item 3 would not have been barred until August 13, 1961, and the action would have been timely by a matter of ten days.

"It seems sufficient answer to this argument to point out that this is not the way the waiver reads; and that it fails to distinguish between an agreement to *extend* the statutory period for a given number of days, on the one hand, and an agreement that the operation of the statute may be *suspended* or interrupted during an uncertain interval, on the other.

"The purpose of such provision for suspension of the statutory time is to permit the Government to have ample opportunity to consider the offer in compromise, without concern over the delay. United States v. Havner, 8th Cir., 101 F.2d 161; Shambaugh v. Scofield, 5th Cir., 132 F.2d 345. The provision—no doubt prepared by the Internal Revenue Service for its own benefit—is indeed a generous one. There is much reason for a suspension of the statute while an offer is being considered, and for perhaps one year thereafter; but when that offer has been finally rejected, there seems little reason to say that if a second offer is made, the Government may have the benefit of a longer suspension period than is provided for in such second offer.

"If the interpretation of this provision be uncertain or its language ambiguous, it is to be construed in a manner most favorable to the taxpayer. United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Bowers v. N. Y. & Albany Lighterage Co., 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484."

\* \* \* \* \*

In a footnote in its brief the government explained its disavowal of the position it unsuccessfully argued in *Morgan* and its present view of Judge Connally's opinion:

"We informed the court below that we did rely on *Bosk* [United States v. Bosk, S.D.Fla.1960, 180 F.Supp. 869] to the extent that the case might support the view that successively filed offers in compromise which in fact caused a continuous and overlapping suspension of the statute of limitations for a single period of time should be viewed as having separately suspended the running of the statute for a total longer period of time which was equal to the separate periods during which each offer was pending as well as for the number of one year periods equal to the number of offers which were filed during the period. This is the position we took in *Morgan,* supra, and which that court rejected. As we have noted previously no appeal was taken in *Morgan* because we felt then, as we do now, that the court was correct as to that issue. However, in *Bosk,* there was no overlapping of offers. The first offer was submitted and rejected. One year following rejection of the first offer the statute again ran for one year, four months and twenty-three days until submission of the second offer. The only similarity between *Bosk, Morgan,* and the instant case is that in all three cases, the taxpayers had filed tax collection waivers prior to the dates on which the offers in compromise which provided for suspension of the statutory period of limitations were submitted. In *Bosk,* the court concluded that the time remaining on the previously filed waivers was the statutory period of limitations that taxpayer agreed to suspend on the dates when he filed his subsequent offers. This Court and *Morgan* reached contrary conclusions and we feel that their conclusions as to that issue are wrong."

As will be explained infra, neither the position of Judge Connally nor that of the government harmonizes entirely with our reading of the statute, § 276 of the 1939 Internal Revenue Code.

The following diagram illustrates the government's position:

————————————Nov. 21, 1945: 6 year statute of limitations starts to run.

←——— Statute runs for 356 days, which leaves 5 years and 9 days of 6-year limitation period.

————————————Nov. 12, 1946: Taxpayer makes his first offer in compromise.

Statute of limitations suspended during this period (time offer being considered by government plus one year).

————————————Sept. 17, 1948: 6-year statute again begins to run as one year has passed since IRS rejection of the taxpayer's first offer in compromise.

←——— Six year statute running.

.....................May 2, 1951: Taxpayer signs waiver agreement which extends limitations *period* to Dec. 31, 1955. Six-year limitation period becomes functus officio, and limitations henceforth to be calculated in reference to limitations period created by the waiver agreement.

←——— Waiver limitations period running.

————————————June 23, 1953: Waiver limitations period suspended by taxpayer's offers in compromise Two through Five.

.....................Dec. 31, 1955: Date certain created by waiver agreement reached. At this point the district court considered functus officio the limitation extension created by waiver agreement. The government, however, argues that the waiver limitation period is viable although temporarily suspended by the offers in compromise.

————————————April 14, 1965: Waiver limitations period again begins to run as one year has passed since the government's rejection of the taxpayer's last offer in compromise. The government maintains that it has two years, six months, and eight days remaining in which to bring this action.

********************July 18, 1965: District court held that the government's claim was barred at this point.

.....................January 20, 1966: This action filed. According to the government's method of calculation, the action was timely filed.

We begin our analysis with an examination of the relevant provisions of the Internal Revenue Code and Regulations. Section 276(c) of the 1939 Code sets forth the relevant limitations period as follows:

"(c) *Collection after assessment.*— Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon." 26 U.S.C., 1952 ed., Sec. 276.[7]

The applicable Treasury regulation provides:

"§ 301.7122–1. *Compromises.*—

\* \* \* \* \* \*

(f) *Requirement with respect to statute of limitations.* No offer in compromise shall be accepted unless the taxpayer waives the running of the statutory period of limitations on both or either assessment or collection of the tax liability involved for the period during which the offer is pending, or the period during which any installment remains unpaid, and for one year thereafter."

We agree with the government that Section 276(c) presents two alternative methods by which the limitations period may be computed. We need only repeat subsections (1) and (2) of that statutory provision for our authority:

"Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, *or* (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. \* \* \* \*" (emphasis added)

Cf. Lesser v. United States, 2 Cir. 1966, 368 F.2d 306, 308, in which the effect of a waiver agreement was expressly judged under the standards of the 1954 Code's equivalent to Section 276(c).

The word "or" in the statute is not a fertile word which is subject to varied constructions. The use of "or" in the statute means that Congress intended that limitations should be determined either by reference to a six-year period, or alternatively by reference to a measure established by agreement between the taxpayer and the government —in the case at bar, the time established in the waiver agreement. Thus when the alternative measure was established by the waiver agreement, the six-year statutory limitation period became functus officio and ceased to have any relevance

---

7. We note that the counterpart of this provision in the 1954 Code, § 6502(a), is the same in all material respects. Section 6502 of the 1954 Internal Revenue Code provides:

SEC. 6502. COLLECTION AFTER ASSESSMENT.

(a) *Length of Period.*—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 6 years after the assessment of the tax, or

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under section 6343 after such 6-year period, then before such release).

The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. (26 U.S.C.A. § 6502)

in the determination of the timeliness of the government's action. The district court, therefore, erred when it looked to the six-year limitation period after that period had become functus officio as a result of the waiver agreement.

■ We now come to the second prong of the government's attack—the point on which our holding against the government turns. The government argues that the waiver agreement replaced the six-year limitation period with a *period* whose extent is measured by the time between the date the waiver agreement was signed and the date certain on which the period is to end. We, however, read the words of waiver, written under statutory authority, as having replaced the statutory six-year period with a *date certain*. Since the waiver agreement created a date certain beyond which the

government could not bring suit instead of a suspendible period, the government's cause of action became lifeless on April 14, 1965, which is one year after the government rejected the last of the taxpayer's offers in compromise.[8]

We emphasize that our holding that the government's cause of action is no longer viable turns upon our determination that the concept of a *date certain* necessarily excludes the concept of a limitations *period*. Whereas neither time or tide can stop the arrival of a *date certain*, a limitations *period* or span of time may be temporarily dammed up (stored for release at a future date) while calendar time continues to run. As the *period* concept has already been illustrated, a graphic representation of the *date certain* concept is called for to put our holding in proper prospective:

Nov. 21, 1945: Six-year statute of limitations starts to run.

Statute runs for 356 days, which leaves 5 years and 9 days of 6-year limitation period.

Nov. 12, 1946: Taxpayer makes his first offer in compromise.

Statute of limitations suspended during this period (time offer being considered by government plus one year).

Sept. 17, 1948: 6-year statute again begins to run as one year has passed since the IRS rejection of the taxpayer's first offer in compromise.

Six year statute running.

May 2, 1951: Signing of waiver agreement extending limitations bar to a *date certain*, Dec. 31, 1955, rather than, as the government contends, for a *period* whose extent is measured in reference to the date to which the waiver extended the limitations bar.

---

8. We reiterate that the government position is that the waiver-created limitation period was suspended by the taxpayer's second offer in compromise and remained suspended while the Internal Revenue Service was considering the taxpayer's third, fourth, and fifth offers in compromise and for one year after the last offer was rejected. Accordingly, when the suspension created by the offers in compromise ended on April 14, 1965, there would have remained two years, six months and eight days; and less than that period had elapsed from April 14, 1965, until January 20, 1966, the date on which this suit was filed. Thus, if the waiver agreement had created a period of time, this suit would not be barred by limitations.

_____ June 23, 1953: Taxpayer makes second offer in compromise. Limitations remain suspended by taxpayer's offers three through five, each of which was made while limitations were suspended by a prior offer in compromise (e.g., the third offer was made while limitations were suspended by the second offer in compromise).

....................... Dec. 31, 1955: Date certain created by waiver agreement. Limitations remain suspended by the taxpayer's second through fifth offers in compromise and will remain so until one year after the IRS rejects the last offer in compromise.

April 14, 1965: Government's cause of action is barred as one year has passed since the IRS rejected the taxpayer's last offer in compromise.

....................... Jan. 20, 1966: This suit filed.

————◆————

At first blush it may appear inconsistent to say that a *day certain* can be suspended by an offer in compromise, but in this instance appearance is not reality. We equate the effect of a suspension on the statute of limitations (whether the six-year period or the date certain created by waiver agreement) with the molecular effect when matter is frozen to absolute zero—all motion ceases. During the period of suspension, the running of the calendar has no effect on the statute of limitations, i. e., the statute is "frozen." When the thaw comes one year after the IRS rejects the taxpayer's offer (or last offer where, as here, there are several offers made in succession), reference is made to the date certain. If that date has not arrived, the government's cause of action is still viable; but if the *date certain* has passed, the government's cause of action is barred by limitations.[9]

The government argues that if the holding of the district court is sustained,

the government in order to achieve the collection of revenue would have to resort to litigation much more frequently than has been its practice in the past because the suspension provisions contained in the offer in compromise forms would be ineffective whenever an offer in compromise is submitted at a point of time which is subsequent to the expiration date of the original six-year statutory period of limitations, but prior to the expiration date specified in the waiver agreement. The reason for this undesirable result, according to the government, is that under the present regulations the Commissioner would be powerless even to consider such an offer in compromise because the regulations expressly provide:

"No offer in compromise shall be accepted unless the taxpayer waives the running of the statutory period of limitations on both or either assessment or collection of the tax liability involved for the period during which

9. Of course where limitations are determined by reference to the six-year statute rather than the waiver agreement, any unused time remaining in the period at the end of the freeze would have to run

before the government's cause of action would be barred. In this regard we agree with the opinion of the district court below and the opinion of Judge Connally in the *Morgan* case, supra footnote 6.

**200**

the offer is pending, or the period during which any installment remains unpaid, and for one year thereafter." Treas. Reg. § 301.7122–1(f).

We have carefully considered the language of the regulation and have found nothing therein which, in the light of this opinion, compels the Commissioner to change his procedures. The regulation only requires the Commissioner, before accepting an offer in compromise for consideration, to get the taxpayer to agree that limitations shall not run while the offer is under consideration and for one year after the offer's rejection. The purpose of this provision is to permit the government to have ample opportunity to consider the offer in compromise without concern that limitations will bar the government's collection action during the time the offer is being considered or shortly thereafter. Nothing in this opinion is contra to that purpose, or to the effectuation of that purpose.

The government also argues that a holding contra to its position will wreak havoc with the procedures by which the Internal Revenue Service keeps a watchful eye on delinquent accounts in order that the government may bring suit while its causes of action are still viable. Limitations statutes, however, are not cadenced to paper tidiness and litigant convenience. Time dulls memories, evidence and testimony become unavailable, and death ultimately comes to the assertion of rights as it does to all things human. See Kavanagh v. Noble, 1947, 332 U.S. 535, 539, 68 S.Ct. 235, 92 L.Ed. 150, 153. Furthermore, the computation method which the government asks us to embrace is as perplexing as any yet suggested and is far more intricate than that which we adopt here. Thus, even if the fears of the government be pertinent, we do not believe that we are making it more difficult for the Internal Revenue Service to focus its watchful eye.

The judgment of the district court is

Affirmed.