**In re Kent M. KLINGSHIRN, Debtor.**

**Kent M. KLINGSHIRN, Plaintiff,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 94–51445.
Adv.No. 94–5130.**

United States Bankruptcy Court,
N.D. of Ohio,
Eastern Division at Akron.

March 28, 1996.

Kathryn Belfance, Akron, OH, for plaintiff.

Michael Davis, Department of Justice, Tax Division, Washington, DC, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

Marilyn SHEA-STONUM, Bankruptcy Judge.

This declaratory judgment action is before the Court on cross-motions for summary judgment filed by Plaintiff–Debtor, Kent Klingshirn (the "Debtor"), and by Defendant,

Internal Revenue Service ("IRS"). This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B) and Bankruptcy Rule 7001(9) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b).

## I. PROCEDURAL HISTORY

On September 15, 1994, the Debtor filed a petition under chapter 13 of the Bankruptcy Code. Schedule E of the Debtor's petition listed one unsecured, priority debt owing to the IRS in the amount of $52,454.87. Paragraph 2 of the Debtor's Plan indicated that the amount owing to the IRS was disputed and that it would be subject to an objection by the Debtor. The IRS filed a proof of claim [1] for $174,923.58 in past due taxes, penalties, and interest (the "Claim") [2] that it claimed were owing as of the date the petition was filed.

On November 29, 1994, the Debtor filed a Complaint for Declaratory Judgment [3] requesting that this Court determine that the Claim was barred by the running of the limitations period and that, therefore, the IRS has no viable claim in his pending chapter 13 case. After obtaining an extension, the IRS timely filed its Answer on February 8, 1995 alleging that the statute of limitations for collection of the Debtor's taxes had been tolled by a previous bankruptcy filing and that the Debtor's taxes were therefore still due.

After a pre-trial conference, held on May 10, 1995, it was determined that this matter might be resolved by the filing of dispositive motions. On August 31, 1995, the Debtor

---

1. The IRS filed its first proof of claim on November 22, 1994. Thereafter a series of amended proofs of claim were filed, the last of which was filed on May 31, 1995. That final proof of claim asserted that Debtor owed $126,072.09 in priority debt and $48,851.49 in unsecured debt. This opinion addresses only whether the IRS is within the statute of limitations in pursuing collection against the Debtor. It does not include any determination with respect to the amount of the IRS' claim.

2. As discussed later in this opinion, the Debtor had filed a chapter 7 bankruptcy case in 1991. This opinion will deal with the effect of that filing on the timing of the right of the IRS to pursue such taxes, penalties and interest and the phrase, the Claim, shall refer to the IRS' right to collect these taxes at various points in time.

3. On March 8, 1995, Debtor filed an Amended Complaint for Declaratory Judgment which contained all of the same Counts and dates as the first Complaint but which revised some of the amounts alleged to be part of the Claim.

filed a Motion for Summary Judgment. On October 2, 1995, the IRS filed a Cross–Motion for Summary Judgment and a response to the Debtor's motion. On November 6, 1995, the Debtor filed a brief in opposition to the IRS' cross-motion and on December 1, 1995, the IRS filed a reply to that document. The matter is now poised for resolution.[4]

## II. FACTS

The undisputed, pertinent facts of this case are set forth in the following chronology:

| | |
|---|---|
| August–November, 1981 | Form 941 [5] taxes assessed against the Debtor for unpaid taxes in the principal amount of $49,014.76. |
| July 11, 1983 | Form 940 [6] taxes assessed against the Debtor for unpaid taxes in the principal amount of $2,354.97. |
| June 25, 1986 | The Debtor and IRS executed Tax Collection Waivers [7] (the "Waiver") and agreed that the collection period for the aforementioned taxes would be extended to December 31, 1992 and further agreed that "if an offer in compromise is made by the taxpayer(s) on or before the date to which the statutory period has been extended, then the time for making any collection will be further extended beyond that date by the number of days ... the offer is pending ..., plus one year." |
| October 21, 1986 | The Debtor submitted an Offer in Compromise to IRS. |
| June 10, 1987 | The Debtor withdrew the Offer in Compromise. |
| March 6, 1991 | The Debtor filed for relief under chapter 7 of the Bankruptcy Code. |
| July 25, 1991 | The Debtor received a discharge. |
| December 31, 1992 | Original deadline for commencement of IRS collection activity as specified in the Waiver. |
| August 20, 1994 | Deadline for commencement of IRS collection activity as extended according to the terms of the Waiver. |
| September 13, 1994 | IRS attached the Debtor's checking account for $179,722.87 in taxes, penalties and interest related to the 1981 and 1983 assessments. |
| September 15, 1994 | The Debtor filed for relief under chapter 13 of the Bankruptcy Code. |

Based upon these undisputed facts the parties disagree as to the appropriate limitations period governing the IRS' collection of taxes.

## III. RELEVANT STATUTES

Section 6502 of the Internal Revenue Code sets forth two alternative time frames in which the IRS may collect taxes from a taxpayer after the taxes have been assessed. That statute states:

(a) **Length of period.**—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in

**4.** A court shall grant a party's motion for summary judgment "if ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing the court that there is an absence of a genuine dispute over any material fact, *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–5, 91 L.Ed.2d 265 (1986)), and, upon review, all facts and inferences must be viewed in the light most favorable to the non-moving party. *Searcy v. City of Dayton*, 38 F.3d 282, 285 (6th Cir.1994); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991), *cert. denied*, 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). Given that the material facts in this case are not in dispute, judgment as a matter of law is appropriate.

**5.** Form 941 taxes refer to Federal Insurance Contribution Act (FICA) taxes which are imposed upon every employer pursuant to 26 U.S.C. §§ 3101–3128.

**6.** Form 940 taxes refer to Federal Unemployment Tax Act (FUTA) taxes that are imposed upon every employer pursuant to 26 U.S.C. §§ 3301–3311.

**7.** On June 25, 1986, the Debtor and the IRS executed three separate Tax Collection Waivers. Each of those waivers agreed to set the deadline for commencement of IRS collection activity at December 31, 1992. For the purposes of this opinion, those three waivers will be referred to in the singular as the Waiver.

court, but only if the levy is made or the proceeding begun—

> (1) within 6 years after the assessment of the tax, or
>
> (2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 6–year period ...

The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

26 U.S.C. § 6502 (1989) (omitting provisions not relevant to this case).[8]

Both the Bankruptcy Code and the Internal Revenue Code address the potential modification of certain periods of time due to the pendency of a bankruptcy case. Section 108(c) of the Bankruptcy Code states:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including the suspension of such period occurring on or after the commencement of this case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c). Section 6503(h) of the Internal Revenue Code states:

> **Cases under title 11 of the United States Code**—The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—
>
> * * * * * *
>
> (2) for collection, 6 months thereafter.

26 U.S.C. § 6503(h).[9]

## IV. THE PARTIES' LEGAL CONTENTIONS

### A. THE IRS

The IRS contends that 26 U.S.C. § 6503(h) mandates that the limitations period provided for in the Waiver should be lengthened by the time in which the Debtor's prior chapter 7 case was pending, thus extending that period to June 28, 1995. The IRS argues that the time in which it could properly commence collection activities for the Claim was extended, first, by the execution of the Waiver, second, by the submission of an offer in compromise, and finally, by the filing of the Debtor's chapter 7 bankruptcy in accordance with 26 U.S.C. § 6503(h). The IRS thus implicitly argues that, in the terms of 11 U.S.C. § 108(c), this controversy is controlled by "an applicable nonbankruptcy law [that fixed] a period for commencing ... a civil action in a court other than a bankruptcy court on the claim against the debtor." *See* 11 U.S.C. § 108(c).

### B. THE DEBTOR

The Debtor contends that the collection period expired on August 20, 1994, the end of the period specified in the Waiver as lengthened to include the time the offer in compromise was pending plus one year. The Debtor further contends that, because the deadline for commencement of the IRS' collection activity in this case is governed by 26 U.S.C. § 6502(a)(2) and is not a limitations period addressed § 6502(a)(1), the period of time during the pendency of the Debtor's

---

8. This provision of the Internal Revenue Code was amended on November 5, 1990 to provide for a 10 year period of limitations. Although the parties do not agree on whether this amended period of time applies to the facts of this case, they do agree on the fact that its application is not dispositive to this case given that the Waiver contemplated a deadline that was beyond even a 10 year statute of limitations.

9. Prior to the 1990 amendments to the Internal Revenue Code, § 6503(h) was designated as § 6503(i).

prior chapter 7 case cannot be "tacked on" to the August 20, 1994 date.

The Debtor attempts to distinguish subsection (a)(1) of 26 U.S.C. § 6502, arguing that it contemplates the passing of a defined period of time, from subsection (a)(2) of 26 U.S.C. § 6502, arguing that it contemplates the passing of a certain date established by agreement, and not a "block of time which may run down." The effect of this distinction, the Debtor argues, is that there can be no extension, pursuant to 26 U.S.C. § 6503(h), of the latter, and therefore the duration of a prior bankruptcy filing cannot be "tacked on" to extend the date certain. As authority for this position, the Debtor relies upon *United States v. Newman,* 405 F.2d 189 (5th Cir.1968).

In *Newman,* the Fifth Circuit panel analyzed the distinction between the two time periods available for tax collection after assessment and held that, when the period is established by an agreement between the taxpayer and the IRS, the six-year statutory limitation period no longer has any effect in determining the timeliness of an IRS action.[10] *Newman,* 405 F.2d at 197–98. The *Newman* Court rejected the IRS' argument that the deadline for the commencement of collection of the debtor's taxes was measured by the number of days between the date the waiver agreement was signed and the date on which the period was to end. *Newman,* 405 F.2d at 198. Instead, the court noted that because the waiver agreement created a date certain beyond which the government could not bring suit, its cause of action "became lifeless" on that date. *Id.*

The Debtor thus argues implicitly that, in terms of 11 U.S.C. § 108(c), the resolution of this controversy is controlled by "an agreement [that fixed] a period for commencing . . . a civil action in a court other than a

bankruptcy court on a claim against the debtor." *See* 11 U.S.C. § 108(c).

## V. ISSUE

The issue in this case is the interpretation of 11 U.S.C. § 108(c) in the context of the Debtor's prior bankruptcy case on the measurement of the time in which the IRS could commence collection of the Claim.

## VI. ANALYSIS

Section 108(c) of the Bankruptcy Code permits the commencement or continuation of a civil action against a debtor until the later of two periods. The first is the end of a period that is established by nonbankruptcy law or an agreement between the debtor and the party initiating the action, that has not expired at the time of a debtor's bankruptcy filing. The second is for 30 days after notice of the termination or expiration of the automatic stay barring such action. Applying this section to the deadline established by the Waiver raises the question of whether this Court is bound by a nonbankruptcy statute, 26 U.S.C. § 6503(h), or by the terms of the parties' agreement, the Waiver.

Given that § 108(c) gives effect to "an agreement [that] fixes a period," this Court would be ignoring the language of that statute if it failed to look to the parties' agreement to determine when the IRS could commence its action against the Debtor. Further, given that 26 U.S.C. § 6502(a)(2) clearly provides that a taxpayer and the IRS can enter into an agreement fixing a deadline for the IRS' commencement of tax collection against a taxpayer, looking to the parties' agreement would harmonize the two statutes.

Turning to the parties' agreement, it is clear that the Waiver took the parties outside the purview of the statute of limitations established by 26 U.S.C. § 6502(a)(1). Instead

10. The *Newman* case dealt with 26 U.S.C. § 276(c). That statute was the precursor to 26 U.S.C. § 6502(a), and stated:

> (c) Collection after assessment—Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six

years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

26 U.S.C. § 276(c) (1952).

of depending upon that statutorily defined period of time, the parties provided that:

[t]he taxpayer(s) and the District Director of Internal Revenue agree that the above unpaid balance of assessment ... may be collected from the taxpayers by levy or proceeding in court begun on or before the date to which the statutory period has been extended. Further, they agree that if an offer in compromise is made by the taxpayer(s) on or before the date to which the statutory period has been extended, then the time for making any collection will be further extended beyond that date by the number of days (1) the offer is pending ..., plus one year.

By the terms of that Waiver, the period for the IRS to timely collect the assessed taxes was set at December 31, 1992 or such later date as contemplated by possible future actions of the Debtor specifically addressed in the agreement.

The parties' agreement was executed on a pre-printed IRS Form 900, a document that was revised by the IRS in July, 1981. In 1981, the provision of 11 U.S.C. § 108(c) which incorporates an agreement between the parties was well established law.[11] Further, court decisions recognizing the distinction between subsections (a)(1) and (a)(2) of 26 U.S.C. § 6502 also existed prior to 1981. *See, e.g., United States v. Newman,* 405 F.2d 189 (5th Cir.1968). In fact, the Debtor contends, and the IRS does not dispute, that in response to the *Newman* decision, Form 900 was amended to require a taxpayer to specifically agree to extend the collection period for the number of days that an Offer in Compromise was pending, plus one year. However, despite the IRS' response to *Newman,* the current Form 900 contains no reference to an automatic extension of the deadline specified in such waiver agreements upon the taxpayer's bankruptcy filing or to the incorporation of any statutory provisions, including 26 U.S.C. § 6503(h).

 Although the Waiver is not a contract, *see Stange v. United States,* 282 U.S. 270, 271, 51 S.Ct. 145, 146, 75 L.Ed. 335 (1931), principles of contract construction would still govern aspects of the agreement. One of the fundamental principles of such construction is that the terms of a document are to be strictly construed against the drafter. *See United States v. Seckinger,* 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970) (indicating that this principle of contract construction applies to the government). As drafter of Form 900, the IRS could have easily inserted a provision which indicated that in addition to lengthening the agreed upon deadline by the time an Offer in Compromise was pending, plus one year, the agreed upon deadline would also be lengthened by the time a taxpayer might have the protection of the automatic stay in any prospective bankruptcy cases. Form 900 con-

---

**11.** Subsection (c) of 11 U.S.C. § 108 is derived from 1898 Act § 11(f) which suspended any statute of limitations affecting provable debts until 30 days after denial of discharge, waiver or loss of discharge, or dismissal of proceedings, whichever occurred first. That concept was in turn incorporated into the 1938 revision of federal bankruptcy law known as the Chandler Act. *See* 11 U.S.C. § 29(f) (1970). The current § 108(c) was enacted with the Bankruptcy Reform Act of 1978. As originally enacted, that subsection stated:

(c) Except as provided in section 524 of this title, if applicable law, an order entered in a proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and (2) 30 days after notice of the termination or expiration of the stay ..., with respect to such claim.

11 U.S.C. § 108 (1978). The legislative history to § 108(c) of the Bankruptcy Reform Act of 1978 indicated that "if a creditor is stayed from commencing or continuing an action against the debtor because of the bankruptcy case, then the creditor is permitted an additional 30 days after notice of the event by which the stay is terminated, whether that event be relief from the automatic stay under proposed 11 U.S.C. 362 or 1301, the closing of the bankruptcy case (which terminates the stay), *or the exception from discharge of the debts on which the creditor claims."* H.R.Rep. No. 595, 95th Cong., 2d Sess. 318 (1977). (This italicized language refers to a provision that did not become a part of the Bankruptcy Reform Act of 1978).

tains no such provision. On this state of documentation, the IRS has only the protection of 11 U.S.C. § 108(c).

Because the Waiver did not include a provision for either a suspension or extension measured by the duration of a taxpayer's bankruptcy, then pursuant to 11 U.S.C. § 108(c), the duration of the Debtor's prior chapter 7 case cannot be "tacked on" to extend the agreed upon date. The effect of § 108(c) would therefore only be to ensure that if the deadline established by the Waiver had expired during the pendency of the Debtor's prior chapter 7 case, then the IRS's action against the debtor could still be timely brought for up to 30 days after notice of the termination or expiration of the automatic stay. *See Rogers v. Corrosion Products, Inc.,* 42 F.3d 292, 295–297 (5th Cir.1995); *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2nd Cir.1993); *In re Radcliffe's Warehouse Sales, Inc.,* 31 B.R. 827, 831 (Bankr. W.D.Wash.1983).

The parties, in their motions for summary judgment, ignored the application of 11 U.S.C. § 108(c) and set forth arguments advocating the application of 26 U.S.C. § 6503(h). However, even if the provisions of § 108(c) were disregarded and § 6503(h) were viewed as controlling, the Court's finding that the IRS' action was untimely would be the same.

▬▬ When deciding upon the application of a statute, the Court must first look to the language used, *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985), and, if possible, must give effect to each word. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *Barker v. Chesapeake & Ohio R.R.,* 959 F.2d 1361, 1367 (6th Cir.1992), *cert. denied,* 506 U.S. 1000, 113 S.Ct. 603, 121 L.Ed.2d 539

(1992). The language used in 26 U.S.C. § 6503(h) addresses "the running of the period of limitations," and it does so in terms of a "suspension" and not an "extension" of time. It is useful then to look at the definitions of the words used. The word "suspend" means to interrupt, to postpone or to discontinue temporarily with an expectation of resumption. BLACK'S LAW DICTIONARY, 1297 (5th ed. 1979). The word "extend" means to expand, to enlarge, to lengthen, or to draw out further than the original limit. BLACK'S LAW DICTIONARY, 523 (5th ed. 1979). The application of the suspension provision of § 6503(h) differs significantly depending upon how the limitations period is defined. Section § 6502(a)(1) of Title 26 deals with periods computed by the passage of a defined number of days, months, or years. By executing the Waiver, the parties agreed to redefine their limitation rights from the § 6502(a)(1) "computational" approach to a § 6502(a)(2) "deadline" approach,[12] simply defined by a calendar end date. This is the distinction noted in *Newman, supra. See also United States v. Simons,* 864 F.Supp. 171 (D.Utah 1994).

When the parties provided for the date certain to establish the deadline for commencement of IRS collection activity, the alternative measure established by the statute of limitations became "functus officio."[13] *See Newman,* 405 F.2d at 198; *Simons,* 864 F.Supp. at 173.

> Whereas neither time or [sic] tide can stop the arrival of a date certain, a limitations period or span of time may be temporarily dammed up (stored for release at a future date) while calendar time continues to run.

*Id.* Given the terminating effect of the "deadline" approach, unless that deadline came during a period when the bankruptcy was pending or on which the bankruptcy had an effect, there is nothing to be suspended. The language of 26 U.S.C. § 6503(h) itself

---

**12.** Because § 6502(a)(2) contemplates an agreement between the parties, it cannot be assumed that all such agreements will incorporate the "deadline" approach. The agreement at issue in each case must therefore be reviewed to determine whether it incorporates a "computational" approach or a "deadline" approach to redefine the parties' limitation rights.

**13.** The term "functus officio" means "[h]aving fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force or authority." BLACK'S LAW DICTIONARY. 606 (5th ed. 1979).

reinforces this distinction by use of the phrase "the running of the period of limitations." This phrase plainly applies to a period defined by a "computational" approach. By contrast, it is difficult to apply that phrase to a period defined by an agreed deadline.

In the case at bar, the date by which the IRS had to commence collection activity was August 20, 1994. The Debtor's chapter 7 case ended on July 25, 1991, and the IRS was able to timely commence collection activity for more than three years after the bankruptcy and prior to August 20, 1994. Since the deadline date did not arrive during the pendency of that case, there was no date or deadline to be suspended. In essence, the IRS' argument proceeds as if § 6503(h) provides for an extension of the time within which it must commence collection activity, rather than the possible suspension actually provided for in the section. Thus, based upon the chronology of this case, the "suspension" addressed in § 6503(h) is not available to the IRS to extend the deadline in the Waiver.

## VII. CONCLUSION

Pursuant to 11 U.S.C. § 108(c), the terms of the Waiver must be given effect. Pursuant to the terms of the Waiver, the duration of the Debtor's prior chapter 7 bankruptcy case cannot act to extend the date certain agreed upon. As such, the final day in which the IRS could timely pursue collection efforts against the Debtor was August 20, 1994. Given that the IRS first attached Debtor's checking account on September 13, 1994, its action was not timely.

Based upon the foregoing, the Court finds that no genuine issues of material fact exist in this case. As such, the Court denies the IRS' cross motion for summary judgment and grants summary judgment in favor of the Debtor.

IT IS SO ORDERED.