UNITED STATES of America,
Plaintiff,

v.

Anthony J. J. A. WILSON, Hedwig C.
Wilson, Massachusetts Mutual Life Insurance Company and Travelers Insurance Company, Defendants.

Civ. A. No. 451–59.

United States District Court
D. New Jersey.

March 31, 1960.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Harold Weideli, Jr., Asst. U. S. Atty., Rahway, N. J., for the government.

Rospond & Rospond, Newark, N. J., by Felix Rospond, Newark, N. J., for defendant Anthony J. J. A. Wilson.

WORTENDYKE, District Judge.

In this action the Government seeks to foreclose an asserted lien for unpaid income taxes upon the cash surrender values of two life insurance policies issued by the defendant insurance companies upon the life of defendant taxpayer and allegedly assigned to taxpayer's codefendant wife during the lifetime of insured. (The insured is still living.)

The complaint alleges that, within the time allowed for collection of the net unpaid balance of taxes, including penalties and interest, the taxpayer submitted offers to compromise his liabilities on that account, which contained waivers of the statute of limitations, one of which were accepted by the Commissioner of Internal Revenue and operated to extend the period within which these taxes were collectible to ᵀuly 3, 1959. While admitting the submission of the offers in compromise, taxpayer's answer denies that the period for collection was extended to the date asserted, and alleges that the

taxes have become uncollectible because of lapse of time.

Upon pretrial conference there were marked in evidence the documents embodying the offers in compromise made by the taxpayer and the responses of the representatives of the Internal Revenue Service relating thereto. Upon these documents and the affidavit of the Acting District Director of Internal Revenue in Newark, New Jersey, the Government moves for summary judgment establishing the asserted amount of taxpayer's liability in this case.

The motion presents two questions: (1) Had the statute of limitations prescribed by § 276 of the Internal Revenue Code of 1939 (26 U.S.C. § 276(c) expired when the present action was instituted? And (2) Is the taxpayer liable to the Government for the tax assessments set forth in the complaint?

26 U.S.C. § 276(c) provides:

"Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

It was conceded in behalf of the taxpayer, upon the argument of the pending motion, that the earliest date upon which the assessment of income taxes was made by the Commissioner of Internal Revenue was June 6, 1947, and that had there been no waiver or agreement to the contrary, the period within which an action might be brought for the collection of the taxes assessed would expire June 6, 1953.

By written offer in compromise dated October 30, 1951, made to the Commissioner of Internal Revenue, the taxpayer offered the sum of $3,500 to secure his release from liability resulting from his nonpayment of income taxes plus interest charges for the years 1944–45 and 1946–47. The tax liability recited against which the offer of compromise was made, amounted to "$28,196.53, additional 1944, $10,397.51, 1945 $3,650.19, 1946 $10,206.71, 1945 additional $3,586.-02, 1947 additional $356.40." (Which figures total $28,196.*83*, instead of the $28,196.*53* alleged therein.) The document referred to further provided as follows:

"It is understood that this offer does not afford relief from the liability sought to be compromised unless and until it is actually accepted by the Commissioner, with the approval of the Secretary of the Treasury or of the Undersecretary of the Treasury, or of an Assistant Secretary of the Treasury, and the terms of this offer have been fully complied with.

"In making this offer and as a part consideration thereof, the proponent hereby expressly agrees that all payments and other credits heretofore made to the account(s) for the period(s) under consideration shall be retained by the United States, and, in addition, the proponent hereby expressly waives:

"1. Any and all claims to amounts of money to which the proponent may be entitled under the Internal Revenue Laws, due through overpayments made prior to the date of the acceptance of this offer of any tax or other liability, including interest and/or ad valorem penalty, and interest on overpayments, or otherwise, as are not in excess of the difference between the liability sought to be compromised hereby and the amount herein offered, and agrees that the United States may retain such amounts of money, if any.

"2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for 1 year thereafter."

The taxpayer certified, over his signature, to the truth and correctness of the conditions of the offer in compromise, and the Commissioner of Internal Revenue, through his deputy, signed an acceptance of the waiver of the statutory period of limitations and stated that the offer in compromise would be considered and acted upon in due course.

This offer was rejected on November 28, 1952.

Counsel stipulated that this offer of compromise was actually pending for one year and two days, and that by its terms, the running of the statute of limitations was stayed for a period of two years and two days thereby.

A subsequent written offer in compromise of the same tax liability was made by the taxpayer on March 24, 1953, by the terms of which the proponent undertook to pay the sum of $5,000 in release of his tax liability, in weekly installments of $50 for a period of 100 weeks. This document contained similar provisions respecting the waiver of limitations and certified that the tax liability to be compromised was "1944 $7,760.-03 1945 $2,868.52 1945 $3,884.74 1946 $9,113.14 1947 $318.21 plus interest." (Total 23,944.64.) The taxpayer filed an amendment of the last mentioned offer in compromise in which he increased the offer to $7,000 payable $500 with the offer, and the balance at the rate of $50 per week, commencing upon notice of acceptance of the offer. In this amendment to the offer, the taxpayer certified that it was made against "unpaid income taxes, including penalties and interest, for years 1944 to 1947, inclusive in the

amounts of $7,760.23, $2,868.52, $3,884.-12, $9,113.14, and $318.21 respectively." (Total 23,944.22.) Each of these written offers in compromise provided that "as a part of this offer, it is agreed that upon notice to the proponent of the acceptance of this offer in compromise of the liability aforesaid, the proponent shall have no right, in the event of default in payment of any installment of principal or interest due under the terms of the offer, to contest in court or otherwise the amount of the liability sought to be compromised, and that in the event of such default the Commissioner of Internal Revenue, at his option, (1) may proceed immediately by suit to collect the entire unpaid balance of the offer, or (2) may disregard the amount of such offer and apply all amounts previously paid thereunder against the amount of the liability sought to be compromised and may, without further notice of any kind, assess and/or collect by distraint or suit (the restrictions against assessment and/or collection being hereby specifically waived) the balance of such liability." The $500 down payment referred to in the amended offer was received by the Internal Revenue Service and deposited on February 19, 1954, and by letter to the taxpayer dated May 11, 1954, the Acting Chief of the Compromise Branch of the Service accepted the amended offer in consideration of the undertakings therein contained and the execution by the taxpayer of a collateral agreement dated February 4, 1954 relating to payments out of annual income for calendar years ended December 31, 1954 through December 31, 1959. The taxpayer admits that he failed to pay any of the weekly installments referred to in the last amended offer in compromise and that by letter dated April 18, 1956, the Director of the Audit Division advised him that "The arrangements looking to the compromise of your tax liability are therefore terminated."

The Government contends that the effect of the foregoing efforts to compromise the taxpayer's liability was to extend the statute of limitations for an aggregate period of six years and 27 days, i. e., to July 3, 1959, and that because the present action was instituted on May 26, 1959, its commencement was well within the period of limitation as so extended.

■ It is the contention of the taxpayer, however, that immediately upon the acceptance of his second amended offer in compromise, i. e., on May 11, 1954, the running of the statute of limitations resumed, and that therefore the present action became barred in July of 1957. I am unable to concur in this view because of the language of the taxpayer's offers in compromise recited above, by which he expressly agrees that "in the event of the default in payment of any installment of principal or interest due under the terms of the offer," he shall have no right to contest the amount of the liability sought to be compromised and the Commissioner, at his option, may either proceed immediately by suit to collect the entire unpaid balance of the offer, or may disregard the amount of the offer entirely and apply all payments previously made thereunder against the liability sought to be compromised, and collect the remainder of the latter amount by distraint or suit. Moreover, the taxpayer further agreed that the running of the statute of limitations should be stayed for the period during which any installment remained unpaid and for one year thereafter. Therefore, the running of the statute of limitations did not resume until the termination of the compromise negotiations effected by the Director's letter of April 18, 1956.

■■ Since the purpose of giving a waiver in connection with an offer in compromise is to enable the Government to consider the offer without suffering prejudice because of the running of the statute of limitations against collection of the tax while the offer is being considered, the courts, in construing such waivers generally give effect to the intention of the taxpayer and of the Government. Where successive waivers have been given for the purpose of tolling the

statute, the parties are deemed to have intended that the suspension of the statute should extend over the entire period covered by the waivers. United States v. Havner, 8 Cir., 1939, 101 F.2d 161. Although the limitation contained in § 276(c) is to be construed liberally in favor of the taxpayer, United States v. Updike, 1930, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984, where there is no ambiguity in the language of the taxpayer's agreement to waive the running of the statute, he will be held to have bound himself within the clear meaning of the terms employed.

■ During the argument of this motion, the taxpayer intimated that the acceptance of the offer in compromise worked an accord and satisfaction between the Government and the taxpayer with respect to the Government's tax claim. The taxpayer's offer to settle his tax liability by installment payments entitled the Government to rely upon the taxpayer's representation that such installments would be paid when due, and completely. The compromise agreement justified the Government in refraining from instituting suit for collection of the tax liability and while the compromise agreement remained in effect, the taxpayer remained estopped to assert that the statute of limitations continued to run. In this particular case, the taxpayer's default in payment of installments evoked the Government's notice of termination of the compromise agreement. The taxpayer cannot now be heard to contend that the Government's right to enforce the entire tax liability was prejudiced by the taxpayer's own breach of his undertaking embodied in his offer of compromise.

■ The Government contends that it is entitled to summary judgment for the amount of taxpayer's tax liability, giving credit to taxpayer for any payments made on account of that liability in connection with the offer of compromise. A summary judgment in this regard can be entered only in the absence of the existence of any genuine issue of material fact respecting the taxpayer's liability to the Government.

■ The question of the amount of the taxpayer's indebtedness to the Government must be determined. The complaint alleges said Wilson's tax indebtedness to the United States to be in the amount of $23,444.84, plus interest as allowed by law on the amounts assessed as described in the complaint. In the taxpayer's offer in compromise which was accepted by the Government on May 11, 1954, the aggregate of the amounts of unpaid income taxes was stated to be $23,944.22. Accompanying this offer was a payment on account of the proposed compromise of $500, receipt of which the Government acknowledges, reducing the aggregate in said offer to $23,444.22. Based upon these figures, I find the Government is entitled to summary judgment against Anthony J. J. A. Wilson in the aggregate sum of $39,829.65, computed as follows:

| Year | Tax | (Accrued to 3/14/60) Interest | |
|------|-----|----------|---|
| 1944 (Additional) | $7,260.23 | $6,801.84 | |
| 1945 (Penalty) | 2,868.52 | 883.64 | |
| 1945 (Additional) | 3,884.12 | 2,727.20 | |
| 1946 (Additional) | 9,113.14 | 5,771.23 | |
| 1947 (Additional) | 318.21 | 201.52 | |
| | $23,444.22 | $16,385.43 | $39,829.65 |

An order may be entered in accordance with the views herein expressed.