T.C. Memo. 2006-231

UNITED STATES TAX COURT

RONALD W. OMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1910-05L.                   Filed October 30, 2006.

P filed a petition for judicial review pursuant to
sec. 6320, I.R.C., in response to a determination by R
that lien action was appropriate.

<u>Held</u>:  The case is remanded for further
consideration by the Internal Revenue Service Office of
Appeals.

Ronald W. Oman, pro se.

<u>Robert W. Dillard</u> and <u>Michael D. Zima</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  This case is before the Court on a petition

for judicial review of a Notice of Determination Concerning

Collection Action(s) Under Section 6320 (Lien) of the Internal Revenue Code.[1]  The issue for decision is whether respondent may proceed with collection, in the form of a filed tax lien, of petitioner's Federal income tax liabilities for the 1990, 1993, 1994, 2000, and 2001 taxable years.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time this petition was filed, petitioner resided in Altamonte Springs, Florida.

Petitioner failed to file a Federal income tax return for 1990.  Petitioner filed untimely for the 1993, 1994, 1996, and 1997 taxable years and did not remit payment of the balances due. Petitioner filed timely for 1999, 2000, and 2001, but again did not remit sufficient payment.

The vast majority of petitioner's tax liabilities arose in 1993 and 1994 when petitioner was president of Public Telephone Corporation and earned over $100,000 in salary each year.  In 1995, Public Telephone Corporation was seized by the Federal Trade Commission and put into receivership.  Thereafter, petitioner held a series of seasonal and odd jobs and relied on friends and family for housing, food, and other bare necessities.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) of 1986, as amended.

Petitioner also struggled with alcohol, drugs, and depression, for which he entered rehabilitation in the fall of 2003.

As of 2004, petitioner's outstanding tax liabilities for the years 1990, 1993, 1994, 1996, 1997, 1999, 2000, and 2001 totaled $169,145.97.  On February 9, 2004, respondent received from petitioner a Form 656, Offer in Compromise, offering to pay $1,000 based on doubt as to collectibility.  Petitioner also provided a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, indicating that he was unemployed, lived with friends, received money from his parents "from time to time" and had no assets.

Respondent thereafter evaluated petitioner's offer, preparing, inter alia, a "Full Pay Worksheet" dated February 17, 2004, and income/expense and asset/equity tables dated July 16, 2004.  The worksheet indicated that petitioner's total ability to pay was zero and stated that "Initial Analysis indicates a Low-Income Taxpayer that can't pay with assets at this time".  The income/expense table reflected that petitioner had monthly income and allowed expenses of $653 and $1,012, respectively, for a $359 monthly negative cashflow, and that "the amount that could be paid" was zero.  The asset/equity table showed that petitioner had a "total minimum value" of zero.

Nevertheless, respondent rejected petitioner's $1,000 offer-in-compromise because petitioner had "an egregious history of

past non-compliance", and respondent's "analysis of * * * [petitioner's] current finances reveals that it will be highly unlikely * * * [petitioner] will be able to remain in compliance during the offer terms." Therefore, respondent concluded "it would not be in the best interest of the government". In the "REJECTION NARRATIVE" prepared in connection with the letter informing petitioner of the rejection, dated August 10, 2004, respondent noted that petitioner's "reasonable collection potential" was zero.

Shortly before rejecting the offer-in-compromise, respondent, on July 22, 2004, filed a Notice of Federal Tax Lien in Seminole County, Florida, with respect to petitioner's 1990, 1993, 1994, 1996, 1997, 1999, 2000, and 2001, income tax liabilities. Respondent then, on July 23, 2004, issued to petitioner a corresponding Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for the taxable years 1990, 1993, 1994, 2000, and 2001.[2] In response, petitioner

---

[2]Taxable years 1996, 1997, and 1999, were not covered by this notice because respondent had previously issued, on October 25, 2000, a Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320 for these years and petitioner had not timely requested a hearing in response to that notice. Respondent had also previously issued, on January 25, 1999, a Final Notice of Intent to Levy and Notice of your Right to a Hearing for taxable years 1993 and 1994, and petitioner had also not timely requested a hearing in response to that notice. Because petitioner's requests for a hearing on the proposed levy for 1993 and 1994, and the filed lien as to 1996, 1997, and 1999, were filed late, petitioner was afforded an equivalent
(continued...)

submitted a Form 12153, Request for a Collection Due Process Hearing, which was received by respondent on August 11, 2004. Petitioner stated his disagreement with the lien as follows: "I'M GOING THROUGH OFFER AND COMPROMISE AS WE SPEAK".

Respondent's Appeals Office conducted a collection hearing by telephone with petitioner on December 14, 2004. During that interview, petitioner continued to press for acceptance of his offer-in-compromise. Thereafter, on January 3, 2005, respondent issued the above-mentioned notice of determination for the 1990, 1993, 1994, 2000, and 2001 taxable years, sustaining the filing of the notice of lien in July of 2004.[3] An attachment to the notice addressed the issues raised by the taxpayer and stated, as relevant here: "The rejection of your offer in compromise has been sustained by Appeals based on IRM 5.8.7.6(5), that due to your egregious history of non-compliance it is in the best

---

[2](...continued)
administrative hearing for these collection actions. Equivalent administrative hearings are not appealable to this Court. See secs. 6320(b)(2), 6330(b)(2); Inv. Research Associates, Inc. v. Commissioner, 126 T.C. 183, 189-191 (2006); Orum v. Commissioner, 123 T.C. 1, 8-11 (2004), affd. 412 F.3d 819 (7th Cir. 2005).

[3]Respondent had earlier issued to petitioner a Decision Letter Concerning Equivalent Hearing Under Section 6330 (Levy) of the Internal Revenue Code sustaining levy action as to taxable years 1993 and 1994, and a Decision Letter Concerning Equivalent Hearing Under Section 6320 (Lien) of the Internal Revenue Code sustaining the filing of a Federal tax lien with respect to taxable years 1996, 1997, and 1999. See supra note 2.

interest of the government not to accept your offer in compromise."

OPINION

I.  Collection Action

    A.  General Rules

If a taxpayer liable to pay taxes fails to do so after demand for payment, the tax liability becomes a lien in favor of the United States against all of the taxpayer's real and personal property and rights to such property.  Sec. 6321.  The lien arises at the time the assessment is made and continues until the liability is satisfied or becomes unenforceable by reason of lapse of time.  Sec. 6322.  The Secretary is obliged to notify the taxpayer that a notice of a Federal tax lien has been filed within 5 business days of filing and of the administrative appeals available to the taxpayer.  Sec. 6320(a).  Upon timely request a taxpayer is entitled to a hearing before the Internal Revenue Service Office of Appeals regarding the propriety of the filing of the lien.  This hearing is conducted in accordance with the procedural requirements of section 6330.  Sec. 6320(b) and (c).

The taxpayer is entitled to appeal the determination of the Appeals Office, made on or before October 16, 2006, to the Tax Court or a U.S. District Court, depending on the type of tax at

issue. Sec. 6330(d).[4] Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews any other administrative determination for an abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182. An abuse of discretion has occurred if the "Commissioner exercised * * * [his] discretion arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999). Petitioner does not dispute the existence or amounts of the underlying tax liabilities. Accordingly, the Court's standard of review is abuse of discretion.

B. Review for Abuse of Discretion

Among the issues that may be raised at the Appeals Office and are reviewed for an abuse of discretion are "challenges to the appropriateness of collection" and "offers of collection alternatives" such as an offer-in-compromise. Sec. 6330(c)(2)(A). The Court does not conduct an independent review of what would be an acceptable offer-in-compromise; rather it gives due deference to the Commissioner's discretion. Murphy v. Commissioner, 125 T.C. 301, 320 (2005); Woodral v. Commissioner,

---

[4]Determinations made after Oct. 16, 2006, are appealable only to the Tax Court. See Pension Protection Act of 2006, Pub. L. 109-280, sec. 855, 120 Stat. 1019.

supra at 23.  The Court reviews the Appeals officer's rejection of an offer-in-compromise to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, supra at 320; Woodral v. Commissioner, supra at 23.

Section 7122(a) authorizes the Secretary to compromise any civil case arising under the internal revenue laws.  In general, the decision to accept or reject an offer, as well as the terms and conditions agreed to, are left to the discretion of the Secretary.  Sec. 301.7122-1(c)(1), Proced. & Admin. Regs. However, regulations promulgated under section 7122 provide that "No offer to compromise may be rejected solely on the basis of the amount of the offer without evaluating that offer under the provisions" of the regulations "and the Secretary's policies and procedures regarding the compromise of cases."  Sec. 301.7122-1(f)(3), Proced. & Admin. Regs.

The grounds for compromise of a tax liability are doubt as to liability, doubt as to collectibility, and promotion of effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.  Petitioner based his offer-in-compromise on doubt as to collectibility, which "exists in any case where the taxpayer's assets and income are less than the full amount of the liability."  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  In determining the taxpayer's ability to pay, the individual facts

and circumstances of the taxpayer's case are considered and the taxpayer is permitted "to retain sufficient funds to pay basic living expenses."  Sec. 301.7122-1(c)(2), Proced. & Admin. Regs.

The Internal Revenue Manual (IRM) contains guidelines for rejection of offers-in-compromise.  IRM sec. 5.8.7.6(5) (Nov. 15, 2004), which respondent relied on in rejecting petitioner's offer, states:

> An offer rejection may also be based on a determination that acceptance of the specific offer at hand is not in the "best interest of the government", per policy statement P-5-100.  Rejections under this provision should not be routine and should be fully supported by the facts outlined in the rejection narrative.  Offers rejected under this section require the review and approval of the second level manager; that is, Territory Manager for the field or Department Manager for COIC [Centralized Offers in Compromise].  Examples of situations that may warrant rejection as not being in the "best interest of the government" include:
>
> Recent compliance satisfies offer processability criteria, however the taxpayer has an egregious history of past non-compliance and our analysis of his current finances reveals that it will be highly unlikely the taxpayer will be able to remain in compliance during the offer terms.

Policy statement P-5-100 (Jan. 30, 1992), on which the IRM relies, states:

> The Service will accept an offer in compromise when it is unlikely that the tax liability can be collected in full and the amount offered reasonably reflects collection potential.  An offer in compromise is a legitimate alternative to declaring a case currently not collectible or to a protracted installment agreement.  The goal is to achieve collection of what is potentially collectible at the earliest possible time and at the least cost to the Government.

In cases where any offer in compromise appears to be a viable solution to a tax delinquency, the Service employee assigned the case will discuss the compromise alternative with the taxpayer and, when necessary, assist in preparing the required forms. The taxpayer will be responsible for initiating the first specific proposal for compromise.

The success of the offer in compromise program will be assured only if the taxpayers make <u>adequate compromise proposals consistent with their ability to pay</u> and the Service makes prompt and reasonable decisions. Taxpayers are expected to provide reasonable documentation to verify their ability to pay. <u>The ultimate goal is a compromise which is in the best interest of both the taxpayer and the Service</u>. Acceptance of an adequate offer will also result in creating for the taxpayer an expectation of a fresh start toward compliance with all future filing and payment requirements. [Emphasis added.]

IRM sec. 5.8.7.6(5) and policy statement P-5-100, as applied in this case, appear to be inconsistent regarding the "best interest of the government". IRM sec. 5.8.7.6(5) pertains to rejecting offers if they are "not in the 'best interest of the government', per policy statement P-5-100", while policy statement P-5-100 describes the dollar amount of offers which are in the "best interest" of the government and encourages such compromises. The "goal" of the offer-in-compromise program, according to policy statement P-5-100, is to collect what is potentially collectible as early as possible, and the "ultimate goal" is to find a compromise that is in the "best interest of both the taxpayer and the Service." Policy statement P-5-100 does not mention "egregious past non-compliance". It instead

mentions "creating for the taxpayer an expectation of a fresh start toward future compliance".

According to policy statement P-5-100, it appears the "best interest of the government" is a compromise that is also in the best interest of the taxpayer and which collects the potentially collectible amount, or more, at the earliest possible time. In the instant case, respondent determined that petitioner's reasonable collection potential was zero. Pursuant to policy statement P-5-100, it appears that acceptance of petitioner's $1,000 offer is in respondent's best interest as it is also in petitioner's best interest and permits respondent to collect more than respondent determined was potentially collectible otherwise. It would also afford petitioner "a fresh start toward future compliance".

The Internal Revenue Manual does contain a provision that allows for rejection of offers that exceed the reasonable collection potential. IRM sec. 5.8.7.6.1 (Nov. 15, 2004) states:

> (1) Policy statement P-5-89 establishes that offers may be rejected on the basis of public policy if acceptance might in any way be detrimental to the interests of fair tax administration, even though it is shown conclusively that the amount offered is greater than could be collected by any other means, if no Effective Tax Administration (ETA) issues exist.
>
> Note: This section should not be confused with IRM 5.8.11.2.2 under Effective Tax Administration (ETA) offers.

(2) A decision to reject an offer for public policy reason(s) should be based on the fact that public reaction to the acceptance of the offer could be so negative as to diminish future voluntary compliance by the general public.  Decisions to reject offers for this reason should be rare.

Example: Below are some examples of situations that may warrant rejection based on a public policy decision.

The taxpayer has openly encouraged others to refuse to comply with the tax laws.

Suspicion that the financial benefits of a criminal activity are concealed or the criminal activity is continuing.

(3) An offer will not be rejected for public policy grounds solely because:

(a) It would generate considerable public interest, some of it critical.

(b) A taxpayer was criminally prosecuted for tax or non-tax violation.

(4) The rejection narrative should discuss the specific public policy issues.

(5) Rejections of this type require the approval of the SB/SE Compliance Area Director in the field or SB/SE Compliance Services Field Director for COIC. [Emphasis omitted.]

Policy statement P-5-89 does not specifically reference "egregious past non-compliance", but appears to provide that in some cases it may be a legitimate basis for rejecting an offer that exceeds the reasonable collection potential.  However, IRM sec. 5.8.7.6.1 provides that respondent should discuss and document the specific public policy issues relevant to the case in the rejection narrative.  Respondent did not reference either

IRM sec. 5.8.7.6.1 or policy statement P-5-89 in the rejection narrative. Rather, respondent referenced IRM sec. 5.8.7.6(5) as the reason for rejecting petitioner's offer.

Offers-in-compromise contain default provisions. IRM sec. 5.19.7.3.20.5(1) (Feb. 1, 2004) provides that "Taxpayers must agree to the future compliance provisions when offers are accepted. The taxpayer must timely file all tax returns and pay all taxes due during the compliance period. The compliance period is five years from the acceptance date or until the offer amount is paid in full, whichever is longer." It further provides "Failure to adhere to the compliance terms could result in the default of the OIC and reinstatement of compromised liabilities." IRM sec. 5.19.7.3.20.5(4) (Feb. 1, 2004). Form 656 Item 8(n) elaborates by providing that if the taxpayer

> fail[s] to meet any of the terms and conditions of the offer and the offer defaults, then the IRS may:
>
> -immediately file suit to collect the entire unpaid balance of the offer
>
> -immediately file suit to collect an amount equal to the original amount of the tax liability as liquidating damages, minus any payment already received under the terms of this offer
>
> -disregard the amount of the offer and apply all amounts already paid under the offer against the original amount of the tax liability
>
> -file suit or levy to collect the original amount of the tax liability, without further notice of any kind.

Respondent argues that doubt as to future compliance is a sufficient reason to reject an offer-in-compromise. Respondent contends that although the default provision of an offer-in-compromise affords respondent some protection, it is not enough. Respondent notes, citing Robinette v. Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006), that where taxpayers violate the future compliance condition, courts have not always found violations to be material and do not always allow respondent to terminate an offer. The Court is not convinced by respondent's speculative argument. Courts have found offers-in-compromise materially breached and have allowed termination of the offer in appropriate cases where taxpayers fail to make payments agreed to in the offer-in-compromise, fail to pay off the amount compromised, or fail to pay taxes owed during the 5-year period after the offer has been accepted. E.g., United States v. Feinberg, 372 F.2d 352, 357-358 (3d Cir. 1965); United States v. Lane, 303 F.2d 1, 4 (5th Cir. 1962); Roberts v. United States, 225 F. Supp. 2d 1138, 1148 (E.D. Mo. 2001); United States v. Wilson, 182 F. Supp. 567, 571 (D.N.J. 1960).

II. Conclusion

Taking into account the inconsistency of IRM sec. 5.8.7.6(5) and policy statement P-5-100, the "best interest of the government" reasoning behind respondent's rejection of petitioner's offer is unclear. Absent clarification, the Court

cannot conclude whether it was an abuse of discretion for respondent to proceed with collection for the reasons and on the authority set forth in the determination letter.  The Court will remand the case to respondent's Appeals Office for further consideration and clarification.

To reflect the foregoing,

An appropriate order will be issued.